672 A.2d 1324

**Bruce MANGUM, Appellant,**

v.

**PENNSYLVANIA FINANCIAL RESPONSIBILITY ASSIGNED CLAIMS, Claims Plan and Constitutional State Service Company and Alan C. Newton.**

Superior Court of Pennsylvania.

Argued Oct. 26, 1995.

Filed Feb. 9, 1996.

Reargument Denied April 9, 1996.

Alan R. Harris, Philadelphia, for appellant.

Joseph Juliana, Lansdale, for PA Financial & Constitution State Service Company, appellees.

Marie A. Fritzinger, Philadelphia, for Alan C. Newton, appellee.

Before McEWEN, SAYLOR and BROSKY, JJ.

BROSKY, Judge.

This is an appeal from the final order of the trial court which granted appellees' post-trial motions and entered judgment in favor of appellees. For the reasons set forth below, we affirm.

Before addressing appellant's claims, we will briefly recount the pertinent facts of this case. Appellant, Bruce Mangum, drove a friend's car in the City of Philadelphia during the early evening hours of March 14, 1990.[1] Appellant traveled in an eastbound direction on Adams/Whittaker Avenue until he reached Roosevelt Boulevard, where he intended to turn northward onto the highway. Appellant proceeded into the intersection and was struck by a vehicle driven by Alan Newton. As a result of the crash, appellant sustained injuries to his knees, shoulder and back which were subsequently treated by his family physician.

Mr. Newton's vehicle was uninsured at the time of the collision. In addition, appellant neither owned a motor vehicle nor lived with someone who owned a vehicle. Consequently, appellant filed a claim under the Pennsylvania Financial Responsibility Assigned Claims Plan ("ACP"), which denied benefits.

Appellant thereafter instituted suit against the ACP and its designated servicing agent, Constitution State Service Company ("CSSC"). ACP and CSSC joined Alan Newton as an additional defendant. Appellant also commenced a separate tort action against Mr. Newton. The case against appellees, ACP, CSSC and Mr. Newton, was initially tried before a panel of arbitrators, who found for appellant in the sum of $12,-093.95.[2] Appellees timely appealed.

1. Renee Mobley owned the vehicle driven by appellant. Although the car had a Pennsylvania license plate, the record does not indicate whether it was registered when the accident occurred.

2. $5,093.95 was for appellant's medical expenses. Appellant was also awarded $10,000 for pain and suffering. However, this award was reduced by $3,000 because the arbitrators deemed appellant to have been partially negligent in causing the accident. Appellant was thus accorded $7,000 for his non-medical damages.

4

Approximately ten days before trial, appellant requested a continuance because his treating physician, Dr. Fabian, was unavailable to testify due to the acute illness of his parents, who resided in Michigan. Appellant's motion was denied. A nonjury trial was held following which the trial judge found in favor of appellant and likewise assessed damages in the sum of $12,093.95.

Appellees timely filed post-trial motions. While these motions were pending, the trial judge died and the case was assigned to another judge for disposition. The reviewing court sustained appellees' post-trial motions and entered judgment in their favor. Appellant timely appealed therefrom.

Appellant presents the following issues for our review: (1) whether the trial judge abused his discretion by denying appellant's motion for a continuance due to his expert medical witness' unavailability; and (2) whether the trial court erred in granting appellees' motion for judgment notwithstanding the verdict. We will address appellant's claims in reverse order, as we deem his second issue to be dispositive.

> When an appellate court reviews the entry of an order granting judgment *non obstante veredicto* the evidence must be reviewed in the light most favorable to the verdict winner, with the benefit of every reasonable inference being resolved in his favor. Judgment n.o.v. may be entered if the movant is entitled to judgment as a matter of law and/or if the evidence is such that no two reasonable minds could disagree that the verdict would be in favor of the movant.

*Boettger v. Miklich,* 534 Pa. 581, 585 n. 2, 633 A.2d 1146, 1148 n. 2 (1993) (emphasis in original). *Accord Shaw v. Kirschbaum,* 439 Pa.Super. 24, 28, 653 A.2d 12, 14 (1994), *allocatur denied,* 541 Pa. 652, 664 A.2d 542 (1995). We also note that our:

> scope of review is limited when examining the decision of a trial court sitting as fact finder.... [T]he findings of a trial court sitting without a jury have the same force and effect on appeal as a jury's verdict. We will reverse the trial court only if its findings are predicated upon an error of law

or are unsupported by competent evidence in the record. On review, it is not within our province to find facts or to substitute our judgment for that of the trial court. Moreover, the trial court is free to believe all, part, or none of the evidence that is presented, to make all credibility determinations, and to resolve any conflicts in the evidence.

*Hodges v. Rodriguez,* 435 Pa.Super. 360, 366, 645 A.2d 1340, 1343 (1994). *Accord Alberici v. Safeguard Mutual Insurance Co.,* 444 Pa.Super. 351, 356, 664 A.2d 110, 113 (1995). We will evaluate both the trial and reviewing judges' determinations in accordance with these principles.

■ Appellant sought benefits pursuant to the assigned claims plan provisions of the Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa.C.S.A. § 1751–§ 1757. The purpose of the assigned claims plan is to provide limited benefits to those individuals who are injured in a motor vehicle-related accident who, through no fault of their own, have no other available source of insurance coverage. *Pennsylvania Financial Responsibility Assigned Claims Plan v. English,* 541 Pa. 424, 664 A.2d 84, 86 (1995) (hereinafter *English* ). Section 1752 delineates the specific requirements which must be met in order for a person to be eligible for these benefits. *See* 75 Pa.C.S.A. § 1752(a); *English,* 541 Pa. at 429–431, 664 A.2d at 87. Except for subsection (a)(6), appellant unquestionably satisfies the remaining eligibility criteria. We will therefore focus our analysis on this provision.

Section 1752(a)(6) provides that a person is eligible to recover benefits from the assigned claims plan if he or she "[i]s otherwise not entitled to receive any first party benefits under section 1711 (relating to required benefits) or 1712 (relating to availability of benefits) applicable to the injury arising from the accident." 75 Pa.C.S.A. § 1752(a)(6). This section thus prohibits an individual who is entitled to receive first party benefits pursuant to another policy of automobile insurance from recovering under the assigned claims plan. Examples of such insurance would be: (1) a policy covering the claimant as a named insured; (2) a policy insuring the claimant as a spouse, relative, child or member of the house-

hold; (3) a policy covering the vehicle which the claimant operated or occupied; or (4) a policy covering another vehicle involved in the accident. *See* 75 Pa.C.S.A. § 1713(a) (identifying the sources of first party benefits policies and the order of priority in which benefits are paid thereunder).

In the context of this case, appellant did not own a motor vehicle at the time of the accident. N.T. 9/13/93 at 7; Brief of ACP/CSSC at 12. He thus had no obligation to purchase a motor vehicle insurance policy. *See English,* 541 Pa. at 433–434, 664 A.2d at 89 (occupant of vehicle, who did not herself own a motor vehicle which was required to be registered, had no obligation to purchase motor vehicle insurance and, in fact, could not purchase such insurance). It is also undisputed that appellant did not reside with anyone who owned a vehicle for which a policy could be issued. *See* N.T. 9/13/93 at 11; Brief of ACP/CSSC at 12. Appellees likewise concede that Mr. Newton was uninsured at the time of the accident. Brief of ACP/CSSC at 12. Consequently, the only other conceivable source of insurance from which appellant could obtain first party benefits is a policy covering Ms. Mobley's vehicle.

With regard to this issue, appellant was asked at trial whether Ms. Mobley's vehicle was insured. N.T. 9/13/93 at 36–37 and 63. Appellant responded, "[n]ot that I know of." *Id.* at 37 and 63. Appellant also attempted to introduce testimony from Marie Bernard, who was employed by appellant's trial counsel. *Id.* at 70. According to appellant's offer of proof, Ms. Bernard would have testified regarding her correspondence with State Farm Insurance Company (State Farm) which indicated that Ms. Mobley was not insured by State Farm. *Id.* at 70–73. However, appellee's counsel objected to the proffered testimony on hearsay grounds. *Id.* at 70 and 73–74. While the record does not contain an explicit ruling on the objection, it does not appear that Ms. Bernard was called to testify, since appellant's counsel rested his case immediately after completing his offer of proof. *Id.* at 74. Appellees introduced no evidence on this subject. Therefore,

appellant's testimony constituted the sole evidence pertaining to the existence of insurance on Ms. Mobley's vehicle.

Appellant's response, interpreted in a light most favorable to him as verdict winner, indicated that he knew or believed that the car was uninsured. However, appellant admitted on cross-examination that he had not asked questions regarding the car's insurance status when he borrowed it. *Id.* at 63. Appellant's testimony, viewed as a whole, thus indicated that the car could have been insured under a policy of which he had no knowledge. The proposed testimony of Ms. Bernard, even if it were to be considered, similarly offers little guidance as it only would have disclosed that Ms. Mobley's car was not insured with State Farm at the time of the accident. Again, this evidence leaves open the possibility that the vehicle could have been covered under a policy issued by a different insurer. We therefore conclude that the evidence introduced at trial was inadequate to prove that Ms. Mobley's vehicle was in fact uninsured at the time of the collision.

As appellant was seeking to recover benefits from the assigned claims plan, he bore the burden of producing a sufficient quantum of evidence demonstrating that there were no policies of insurance from which he could recover first party benefits. In fulfilling his evidentiary burden, appellant was not obligated to contact every insurer who does business in this state to ascertain the insurance status of Ms. Mobley's car at the pertinent time. He easily could have satisfied his burden of proof by either deposing Ms. Mobley or calling her as a witness at trial. Appellant did not do so. Instead, he chose to rely upon his own testimony which fell woefully short of establishing by a preponderance of the evidence that Ms. Mobley's vehicle was uninsured. *See, e.g., Robinson v. Pennsylvania Assigned Claims Plan,* 16 Pa.D. & C.4th 256, 266–267, 270–271 (C.C.P. Philadelphia 1992) (plaintiff-claimant did not satisfy her burden of proof under section 1752(a)(6) where she failed to present any evidence that the vehicle she test-drove was uninsured; plaintiff did not depose the car dealer/owner of the vehicle, call him as a witness or offer any evidence that she had attempted to locate him to ascertain the

8

insurance status of the vehicle); *Zubris v. Pennsylvania Assigned Claims Plan,* 321 Pa.Super. 83, 91–92, 467 A.2d 1139, 1143 (1983) (plaintiff did not sustain his burden of proof that he neither knew nor had reason to know of the uninsured status of a vehicle for more than two years after the accident where he made only meager efforts to acquire information regarding the existence and scope of coverage).

Because the evidence presented by appellant is, as a matter of law, insufficient to establish his eligibility to recover any benefits from the ACP, the reviewing court properly granted appellees' motion for judgment notwithstanding the verdict. *Lilley v. Johns–Manville,* 408 Pa.Super. 83, 91, 596 A.2d 203, 206 (1991), *allocatur denied,* 530 Pa. 644, 607 A.2d 254 (1992) (where the evidence is insufficient to sustain the verdict, the remedy granted in civil cases is a judgment notwithstanding the verdict). Finding no error or abuse of discretion, we affirm.[3]

Order and Judgment affirmed.

3. Our decision renders it unnecessary for us to address the remaining allegation of error involving the denial of appellant's motion for a continuance. Dr. Fabian's testimony, if obtained, would have addressed appellant's injuries and the treatment rendered in connection therewith. His testimony was thus only relevant to the issue of damages. Before the damages question can be reached, appellant's eligibility to recover benefits must first be shown. As discussed above, appellant failed to prove that he met the requisite criteria and is ineligible to receive any benefits from the assigned claims plan. The question of whether a continuance should have been granted due to Dr. Fabian's unavailability is therefore moot.

We likewise need not address the propriety of the alternative grounds relied upon by the reviewing judge in support of his decision to grant appellees' motion for judgment n.o.v. However, we note that the reviewing judge erred to the extent he attempted to reevaluate the credibility and weight of the evidence relating to the causation of the accident. *See Hodges v. Rodriguez* and *Alberici v. Safeguard Mutual Insurance Co., supra* (the findings of a trial court sitting without a jury have the same force and effect as a jury's verdict; a reviewing court may not re-examine the weight and credibility determinations made by the trier-of-fact and substitute its judgment for that of the fact-finder). This error nonetheless does not entitle appellant to any relief. *See, e.g., Al Hamilton Contracting Co. v. Cowder,* 434 Pa.Super. 491, 496, 644 A.2d 188, 190 (1994) (where a lower court has reached the correct result, its order will be affirmed on appeal if it is correct on any legal

ground or theory, regardless of the reason or theory adopted by the trial court).