Tisha HESTER, Ralph Frye, Marchelle Frye and Vivian Frye, Appellees,

v.

PENNSYLVANIA FINANCIAL RE-SPONSIBILITY ASSIGNED CLAIMS ACP and Constitution State Service Company, Appellants.

Superior Court of Pennsylvania.

Argued June 22, 1999.

Filed Nov. 15, 1999.

Michael J. Block, Philadelphia, for appellants.

Martin G. Goch, Philadelphia, for appellees.

Before ORIE MELVIN, SCHILLER and LALLY–GREEN, JJ.

SCHILLER, J.

¶ 1 Appellants, Pennsylvania Financial Responsibility Assigned Claims Plan (hereinafter "ACP") and Constitution State Service Company ("CSSC"), assignee of the ACP, appeal the judgment entered on January 19, 1999, in the Court of Common Pleas of Philadelphia County in favor of Appellees, Tisha Hester, Ralph Frye, Marchelle Frye and Vivian Coleman.[1] We affirm.

FACTS:

¶ 2 The facts of this case are not in dispute. On July 25, 1990, Appellees were passengers in an automobile owned and

_____

1. We note that this appeal was filed under the name of Vivian "Frye"; however, the com-plaint and all previous proceedings refer to Appellee as Vivian "Coleman".

operated by Debbie Wooden, a resident of Pennsylvania. While approaching the intersection of 39 th and Chestnut Streets in Philadelphia, Pennsylvania, the vehicle was struck on the passenger side by a second vehicle. The second vehicle left the scene of the accident, and was later determined to be stolen and uninsured. The collision was caused by the sole negligence of the operator of the stolen vehicle.

¶ 3 Although Ms. Wooden received title for her vehicle in Pennsylvania on June 20, 1990, the vehicle was unregistered on the date of the accident. A Pennsylvania Department of Transportation (PennDOT) search revealed that the vehicle's tag number was last registered to a vehicle owned by another Pennsylvania resident, Marvin Holloway, and that such registration had since expired.[2]

¶ 4 At the scene of the accident, Ms. Wooden produced a Pennsylvania Financial Responsibility card dated July 20, 1990, which identified Reliance Insurance Company (hereinafter "Reliance") as her insurer. However, Reliance later denied coverage, confirming in writing that no such automobile insurance policy was ever issued to Ms. Wooden. Appellees neither owned a motor vehicle nor resided with anyone who owned a motor vehicle at the time of the accident. Consequently, they sought first party medical benefits and uninsured motorist coverage from the ACP.[3] Their claims were assigned to Appellant CSSC and subsequently denied.

¶ 5 Appellees then filed a civil action against the ACP and CSSC to recover benefits. On January 21, 1997, an arbitra-tion panel found in favor of Appellants. However, on *de novo* appeal to the Court of Common Pleas of Philadelphia County, the trial court found in favor of Appellees based upon stipulated facts and briefs submitted by the parties.[4] Post-trial motions were filed and subsequently denied by the trial court on January 19, 1999. This timely appeal followed.

DISCUSSION:

¶ 6 Appellants raise two issues for our review: (1) whether the trial court erred in finding Appellees satisfied the eligibility requirement of 75 Pa.C.S. § 1752(a)(5) despite occupying a motor vehicle unregistered at the time of the accident; and (2) whether the trial court erred in finding Appellees sufficiently established they were not otherwise entitled to first party benefits, as required by 75 Pa.C.S. § 1752(a)(6)? Appellants' Brief, at 4.

¶ 7 Our standard of review in a nonjury trial is well established:

We must determine whether the findings of the trial court are supported by competent evidence and whether the trial judge committed error in the application of law. Additionally, findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as a verdict of a jury and will not be disturbed absent error of law or abuse of discretion.

*Stonehedge Square Ltd. v. Movie Merchants, Inc.*, 454 Pa.Super. 468, 685 A.2d 1019 (1996), *affirmed*, 552 Pa. 412, 715 A.2d 1082 (1998) (quoting *Olmo v. Matos*, 439 Pa.Super. 1, 653 A.2d 1, 3 (1994),

---

2. In order for a vehicle to be validly registered in Pennsylvania, there must be: (1) an application for registration to the Pennsylvania Department of Transportation (PennDOT), 75 Pa.C.S. § 1304–05, and (2) an annual renewal of the registration, as it will expire. 75 Pa.C.S. §§ 1307(a), 1308, 1309. PennDOT is mandated to keep records of all registrations issued as well as those denied. 75 Pa.C.S. § 1316. It is undisputed that the vehicle owned and operated by Ms. Wooden was unregistered at the time of the accident.

3. In an effort to ensure that owners of motor vehicles in this Commonwealth purchase adequate insurance, owners are precluded from claiming benefits under the Pennsylvania Financial Responsibility Assigned Claims Plan ("ACP"). 75 Pa.C.S. § 1752(a)(3). Therefore, Debbie Wooden is not a party to the suit.

4. The parties stipulated to damages if Appellees were found to be eligible claimants under the ACP.

*appeal denied,* 541 Pa. 652, 664 A.2d 542 (1995)). Further, our scope of review of questions of law is plenary. *McGee v. Pennsylvania Fin. Responsibility Assigned Claim Plan,* 725 A.2d 1239 (Pa.Super.1999).

¶ 8 In reviewing Appellants' claims, we must first examine the purpose of the ACP. The ACP was created by Subchapter E of the Motor Vehicle Financial Responsibility Law (hereinafter "MVFRL")[5], 75 Pa.C.S. §§ 1751–1757, to provide "limited statutory benefits to certain eligible claimants injured in an automobile-related accident, who are not otherwise entitled to recover benefits." *Hodges v. Rodriguez,* 435 Pa.Super. 360, 645 A.2d 1340, 1347 (1994). The ACP is not an insurer under the MFVRL. Rather, it is an administrative organization maintained by all insurers that provide financial responsibility, as required by law. *Hagans v. Constitution State Serv. Co.,* 455 Pa.Super. 231, 687 A.2d 1145, 1148 (1997). The ACP collects surcharges from all Pennsylvania automobile insurers as a cost of conducting business in this Commonwealth, contracts with an individual insurance company to handle the claim and distributes certain limited statutory benefits.[6] *See Hodges, supra.*

¶ 9 However, in order to recover benefits under the ACP, a claimant must first satisfy the seven eligibility requirements set forth in 75 Pa.C.S. § 1752(a). Under this provision, a person is only eligible if he or she:

(1) Is a resident of this Commonwealth.

(2) Is injured as the result of a motor vehicle accident occurring in this Commonwealth.

(3) Is not an owner of a motor vehicle required to be registered under Chapter 13 (relating to registration of vehicles).

(4) Is not the operator or occupant of a motor vehicle owned by the Federal Government or any of its agencies, departments or authorities.

(5) Is not the operator or occupant of a motor vehicle owned by a self-insurer or by an individual or entity who or which is immune from liability for, or is not required to provide, benefits or uninsured and underinsured motorist coverage.

(6) Is otherwise not entitled to receive any first party benefits under section 1711 (relating to required benefits) or 1712 (relating to availability of benefits) applicable to the injury arising from the accident.

(7) Is not the operator or occupant of a recreational vehicle not intended for highway use, motorcycle, motor-driven cycle or motorized pedalcycle or other like type vehicle required to be registered under this title and involved in the accident.

75 Pa.C.S. § 1752(a).

¶ 10 Appellants first contend that Appellees did not satisfy Section 1752(a)(5). They specifically assert that the owner of the host vehicle was not required to provide first party benefits because the vehicle was unregistered at the time of the accident, and Appellees were therefore ineligible for ACP benefits under Section 1752(a)(5).[7] In response,

---

**5.** Act of February 7, 1990, P.L. 11, No. 6, effective July 1, 1990.

**6.** The ACP provides medical benefits up to a maximum of $5,000 as well as uninsured motorist coverage for losses or damages suffered as a result of the injury up to a maximum of $15,000, less any medical benefits already paid. 75 Pa.C.S. §§ 1753, 1754.

**7.** Appellants rely on the language of 75 Pa. C.S. § 1711(a), which requires insurers to

provide a minimum amount of medical benefits for those vehicles actually "registered *and* operated in this Commonwealth" 75 Pa.C.S. § 1711 (emphasis added). As the host vehicle was unregistered at the time of the accident, Appellants argue that the owner of the vehicle was not required to provide "benefits" under Section 1711(a), and Appellees therefore do not meet the eligibility requirement of 75 Pa. C.S. § 1752(a)(5).

Appellees argue that, although the host vehicle was not actually registered at the time of the accident, it was of the type *required to be registered.* Consequently, Appellees contend that the owner of the vehicle was required to maintain financial responsibility, and cannot be deemed an individual who is " . . . immune from liability for, or is not required to provide, benefits or uninsured and underinsured motorist coverage." 75 Pa.C.S. § 1752(a)(5).[8] Based on the Pennsylvania Supreme Court's decision in *Pennsylvania Fin. Responsibility Assigned Claims Plan v. English,* 541 Pa. 424, 664 A.2d 84 (1995), in which the Court held that the proper interpretation of Section 1752(a)(5) required an analysis of whether the owner of the host vehicle must maintain financial responsibility under Section 1786, we agree with Appellees and find them to be eligible claimants under the ACP.

¶ 11 In *English, supra,* Mary English was the passenger in an uninsured vehicle struck by a second uninsured vehicle. English neither owned a vehicle nor resided with an individual owning a vehicle, and therefore had no insurance policy from which to recover benefits for her injuries. Accordingly, she applied for benefits from the ACP. The ACP paid basic loss benefits but denied English uninsured motorist benefits. The ACP sought a declaratory judgment confirming that English was ineligible for benefits under the ACP. There-

after, both parties filed motions for judgment on the pleadings. The trial court denied the ACP's motion and granted English's motion, finding her an eligible claimant under the ACP because the owner of the host vehicle was required to provide medical benefits.

¶ 12 On appeal, this Court reversed the judgment entered by the trial court and held that English was not an eligible claimant under the ACP. Pursuant to the Act 6 amendments to 75 Pa.C.S. § 1731(a), providing that the purchase of uninsured and underinsured motorist coverage is optional,[9] we concluded that, although the owner of the vehicle occupied by English was still required to provide medical benefits under Section 1711, he was not required to provide uninsured or underinsured motorist coverage. Based on the premise that, under Section 1752(a)(5), an occupant or operator of a motor vehicle is only eligible for benefits from the ACP if the owner of the vehicle is required to provide *both* medical benefits *and* uninsured and underinsured motorist coverage, this Court held that English was not an eligible claimant under the ACP.

¶ 13 However, the Supreme Court of Pennsylvania granted *allocatur* to interpret the statutory language prescribed in Section 1752(a)(5)—"an individual or entity who or which is immune from liability for, or is not required to provide, benefits or

---

8. Self-certification of financial responsibility must be produced at the time of registration. 75 Pa.C.S. § 1786(b). "Financial responsibility" is defined as:
    The ability to respond in damages for liability on account of accidents arising out of the maintenance or use of a motor vehicle in the amount of $15,000 because of injury to one person in any one accident, in the amount of $30,000 because of injury to two or more persons in any one accident and in the amount of $5,000 because of damage to property of others in any one accident.
    75 Pa.C.S. § 1702.

9. Pursuant to the 1990 amendments to Act 6 of the Pennsylvania Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S. § 1731(a) currently reads as follows:

**§ 1731. Availability, scope and amount of coverage**
(a) **Mandatory offering.—** No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured motorist and underinsured motorist coverages are offered therein or supplemental thereto in amounts as provided in section 1734 (relating to request for lower limits of coverage). *Purchase of uninsured motorist and underinsured motorist coverage is optional.*
75 Pa.C.S. § 1731(a) (emphasis added).

uninsured and underinsured motorist coverage." The Court held that an individual satisfies subsection (a)(5) so long as the owner of the host vehicle was required to maintain financial responsibility under 75 Pa.C.S. § 1786 and pronounced, "[t]his interpretation is not only in keeping with the plain meaning of the statute but is also consistent with the purpose of the Assigned Claims Plan which is, ... to provide benefits to injured persons who, through no fault of their own, have no insurance to protect themselves." *English*, 541 Pa. at 431, 664 A.2d at 88. The Court further reasoned the following:

> ... it seems clear to this Court that the intent behind § 1752(a)(5) was simply to recognize that persons occupying a vehicle owned by a properly self-insured person or someone who was *not required to maintain financial responsibility* under the MVFRL would not be eligible for coverage under the Assigned Claims Plan because there were other sources of recovery available and/or because the owner of the vehicle either was exempt from compliance with the MVFRL or had no obligation to contribute to the Assigned Claims Plan. *See, e.g.* 75 Pa.C.S. § 1787(c) (self-insurers are not required to contribute to the Assigned Claims Plan).

*Id.* (emphasis added).[10] The Court made clear that the purpose of the ACP is twofold: first, to encourage owners of vehicles to purchase adequate insurance, and second, to provide innocent passengers with benefits otherwise unavailable. *Id.* at 433, 664 A.2d at 89. Thus, the Court held that the eligibility requirement under subsection (a)(5) was satisfied because the owner of the host vehicle was required to provide financial responsibility under 75 Pa.C.S. § 1786, and English was therefore entitled to benefits from the ACP.

¶ 14 As we are bound by our Supreme Court's interpretation of Section 1752(a)(5) under *English, supra*, the focus of our inquiry must be on whether the owner of the vehicle in which Appellees were passengers was required to provide financial responsibility pursuant to the mandate of 75 Pa.C.S. § 1786.[11] Section 1786(a) specifically provides, "[e]very motor vehicle *of the type required to be registered* under this title which is *operated or currently registered* shall be covered by financial responsibility." *Id.* (emphasis added); *see* 75 Pa.C.S. § 1305(d) (requiring self-certification of financial responsibility at time of registration). Section 1301 further provides that all motor vehicles driven upon Pennsylvania highways shall be registered in Pennsylvania unless exempt.[12] Neither

**10.** The Court additionally reasoned that to interpret subsection (a)(5) otherwise would effectively preclude all claimants injured after the effective date of the Act 6 amendments (July 1, 1990) from obtaining benefits under the ACP except pedestrians and bicyclists, and that such a result would be unfair and unreasonable. It specifically rejected the proposition that passengers in an uninsured motor vehicle assume the risk of being injured any more than pedestrians and bicyclists. *Pennsylvania Fin. Responsibility Assigned Claims Plan v. English*, 541 Pa. 424, 433–34, 664 A.2d 84, 88–89 (1995). Rather, the Court stated, "the real question is whether one type of innocent victim of negligent driving is deserving of any less protection than another. In light of the purposes to be served by the Assigned Claims Plan, we think not." *Id.*

**11.** To the extent Appellants claim that a motor vehicle must be registered *and* operated in Pennsylvania at the time of the accident in order for an insured to be entitled to first party benefits under Section 1711 of the MVFRL, we agree. *See Pugh v. Government Employees Ins. Co.*, 380 Pa.Super. 606, 552 A.2d 708 (1989) (holding that in order to recover first party benefits under 75 Pa.C.S. § 1711, the insured vehicle must be of the type required to be registered and must actually be registered in the Commonwealth at the time of the accident). However, as we find Section 1711 inapplicable to our analysis of Section 1752(a)(5) based upon the Pennsylvania Supreme Court decision in *English, supra*, such a determination is irrelevant to the issue before us.

**12.** Section 1302 of the MVFRL exempts numerous types of vehicles from registration. Additionally, Section 1303 generally exempts nonresidents from registering a motor vehicle provided the vehicle is properly registered in his or her place of residence.

party alleges that Ms. Wooden's vehicle was exempt from the registration requirements of the MVFRL. Ms. Wooden's vehicle was titled in Pennsylvania, owned by a Pennsylvania resident, and last registered in Pennsylvania. Thus, pursuant to the clear and unambiguous language of these provisions, Ms. Wooden owned and operated a vehicle of the type required to be registered and was, therefore, required to provide financial responsibility pursuant to Section 1786. In fact, she produced a financial responsibility card at the scene of the accident.

¶ 15 Moreover, the cases relied upon by Appellants in urging a contrary result, *e.g.*, *Rosado v. Constitution State Serv. Co.*, 425 Pa.Super. 561, 625 A.2d 1239 (1993) and *Zeigler v. Constitution State Serv. Co.*, 430 Pa.Super. 284, 634 A.2d 261 (1993), are factually distinguishable from the case *sub judice*. In *Rosado, supra,* the claimant was a passenger in a motor vehicle owned by a resident of Pennsylvania but registered in New Jersey. Similarly, in *Zeigler, supra,* the vehicle occupied by the claimants was never registered in Pennsylvania; rather, it was last registered in Alabama by an Alabama resident and the owner of the vehicle at the time of the accident was unknown. In the instant case, however, the owner of the host vehicle was a resident of Pennsylvania, the vehicle was titled in Pennsylvania, and there is nothing in the record to indicate that the vehicle should have been registered in any state other than Pennsylvania. Thus, *Rosado* and *Zeigler* are not controlling.[13]

¶ 16 Appellants cannot now successfully argue that Ms. Wooden was an individual "immune from liability for, or not required to provide, benefits or uninsured and underinsured motorist coverage," 75 Pa.C.S. § 1752(a)(5), as a result of her own failure to register or renew the registration on her vehicle. Such a result would effectively preclude any and all passengers of an illegally unregistered motor vehicle from claiming benefits under the ACP, and thereby undermine the intent of the Act.[14] As such, we conclude that where, as here, the vehicle is "of the type required to be registered", as prescribed in Section 1786 pertaining to financial responsibility, the occupants of the host vehicle satisfy 75 Pa.C.S. § 1752(a)(5) regardless of whether the vehicle was actually registered at the time of the accident.

¶ 17 Appellants alternatively argue that Appellees did not meet their burden under Section 1752(a)(6) of the MVFRL. Subsection (a)(6) provides that a person who is otherwise eligible for first party benefits from another policy of automobile insurance may not receive benefits under the ACP. *Mangum v. Pennsylvania Fin. Responsibility Assigned Claims*, 449 Pa.Super. 1, 672 A.2d 1324, 1326 (1996). Such policies would include: (1) a policy covering the claimant as a named insured; (2) a policy insuring the claimant as a spouse, relative, child or member of the household; (3) a policy covering the vehicle which the claimant operated or occupied; or (4) a policy covering another vehicle involved in the accident if the claimant is not the occupant of a motor vehicle. *Id.* at 1327; 75 Pa.C.S. § 1713(a).[15]

---

13. We think it is important to note that in *English, supra,* the Pennsylvania Supreme Court referenced *Rosado v. Constitution State Serv. Co.*, 425 Pa.Super. 561, 625 A.2d 1239 (1993), to exemplify those situations where the owners of motor vehicles are "otherwise exempt from complying with the MVFRL because ... they own a vehicle which is registered in another state." *English,* 541 Pa. at 432, 664 A.2d at 88.

14. The record is barren as to whether Ms. Wooden was issued a citation or sanctioned in any way for failing to produce proof of registration at the scene of the accident. If more violators were prosecuted, the law-abiding Pennsylvanians would not have to bear the costs through increased insurance rates.

15. 75 Pa.C.S. § 1713(a) provides:

(a) **General rule.**—Except as provided in section 1714 (relating to ineligible claimants), a person who suffers injury arising out of the maintenance or use of a motor vehicle shall recover first party benefits

¶ 18 It is unrefuted that Appellees did not own an automobile at the time of the accident and were not covered by a policy purchased by a relative or member of the household. Moreover, Appellants concede that Appellees should not be required to contact every insurer in the state in order to establish that the host vehicle was uninsured. Yet, Appellants contend that Appellees must have, at a minimum, deposed Ms. Wooden, as the owner of the vehicle, or called her as a witness at trial to establish that her vehicle was not insured by Reliance or any other insurance company.

¶ 19 Appellants' argument is based solely on the authority of *Mangum, supra*. In *Mangum*, the appellant, Bruce Mangum, was driving his friend's vehicle when he was struck by an uninsured vehicle. Mangum neither owned an automobile nor resided with someone who did so. Accordingly, he sought benefits from the ACP. At trial, Mangum was asked whether the owner of the vehicle that he operated had purchased insurance. Mangum responded, "[n]ot that I know of." Mangum attempted to introduce testimony that State Farm Insurance Company indicated they never insured the subject vehicle. However, this testimony was never admitted into evidence. Thus, the sole evidence pertaining to the existence or nonexistence of an insurance policy on the vehicle he drove was Mangum's testimony. On cross-examination, Mangum conceded that he did not ask questions regarding the vehicle's insurance status when he borrowed it. The trial court entered judgment in favor of the ACP, the assignee, CSSC, and the owner of the second vehicle. On appeal, this Court affirmed, holding that the evidence presented at trial was insufficient to establish that the owner of the vehicle was,

in fact, not covered by an insurance policy from State Farm or any other insurance company. *Mangum, supra* at 1327. We further suggested that this fact could have easily been proven by deposing the owner of the vehicle or calling her as a witness at trial, rather than simply relying on his own testimony. *Id.*

¶ 20 In the instant case, however, the parties stipulated that Ms. Wooden produced a financial responsibility card at the time of the accident identifying Reliance as the insurer, that Reliance denied coverage, and that the denial of coverage was confirmed in writing. While we cannot deduce from the record whether Ms. Wooden intentionally produced a fake insurance card at the scene of the accident or whether Reliance unjustifiably denied coverage, Appellants fail to provide us with any evidence indicating that Ms. Wooden has a policy with any insurer other than Reliance. Further, as aptly noted by the trial court, an "uninsured motor vehicle" is defined as, *inter alia,* a "motor vehicle for which the insurance company denies coverage...." 75 Pa.C.S. § 1702.

¶ 21 As legitimately uninsured occupants of an illegally uninsured motor vehicle, Appellees are not entitled to first party benefits under any insurance policy. *See McGee, supra.* Accordingly, they must be eligible to seek benefits from the ACP as the insurance policy allegedly covering Ms. Wooden's vehicle, which was the sole source of first party benefits obtainable by the claimants, was denied, and Ms. Wooden was otherwise required to provide financial responsibility under the MVFRL.

CONCLUSION:

¶ 22 Accordingly, the judgment entered on January 19, 1999, in the Court of

against applicable insurance coverage in the following order of priority:
(1) For a named insured, the policy on which he is the named insured.
(2) For an insured, the policy covering the insured.
(3) For the occupants of an insured motor vehicle, the policy on that motor vehicle.

(4) For a person who is not the occupant of a motor vehicle, the policy on any motor vehicle involved in the accident. For the purpose of this paragraph, a parked and unoccupied motor vehicle is not a motor vehicle involved in an accident unless it was parked so as to cause unreasonable risk of injury.
*Id.*

Common Pleas of Philadelphia County is affirmed.

¶ 23 Dissenting Statement filed by ORIE MELVIN, J.

ORIE MELVIN, J., dissenting:

¶ 1 I disagree with the Majority's conclusion that appellees met their burden under § 1752(a)(6) because I believe they did not prove that Ms. Wooden was uninsured. Therefore, I must dissent.

¶ 2 In *Mangum v. Pennsylvania Fin. Responsibility Assigned Claims*, 449 Pa.Super. 1, 672 A.2d 1324 (1996), this Court discussed the quantum of proof necessary to demonstrate whether a vehicle was covered by a policy of insurance for purposes of recovering first party benefits. In *Mangum*, in response to the question of whether the vehicle he was driving was insured, the claimant testified, "[n]ot that I know of." The claimant also sought to introduce evidence that the vehicle was not insured by State Farm Insurance Company. However, the evidence was not admitted. As the Majority notes the *Mangum* Court found the claimant's testimony alone that his friend's car was uninsured was insufficient to entitle him to benefits. The *Mangum* Court also noted evidence indicating the car was not insured with State Farm at the time of the accident, even if admitted, would have been insufficient because it leaves open the possibility that the vehicle could have been covered by a policy issued by a different carrier. The Court stated the claimant's burden could have easily been met had he either deposed the owner of the vehicle or called her as a witness at trial.

¶ 3 It was appellees' burden to show by a preponderance of the evidence that Ms. Wooden had no insurance on her vehicle the day of the accident. The only evidence appellees offered in this regard was the stipulation that the Pennsylvania Financial Responsibility card produced by Ms. Wooden immediately after the accident was invalid. Such evidence falls far short of the necessary quantum of proof required to sustain their burden. An invalid insurance card from one insurance company does not establish that Ms. Wooden's vehicle was not insured by another carrier or whether Reliance unreasonably denied coverage. The possibility still existed that Ms. Wooden's vehicle was covered by another insurance carrier. The majority states that while we cannot deduce whether Ms. Wooden produced a fake insurance card or whether Reliance unjustifiably denied coverage, appellants fail to provide us with any evidence indicating that Ms. Wooden has a policy with any insurer other than Reliance. It is not appellants' burden to do so. The burden lies with appellees. Testimony from Ms. Wooden would have easily established whether the vehicle was uninsured. Based on the record, I believe appellees have failed to meet their burden, and therefore cannot recover under the Assigned Claims Plan.

¶ 4 Accordingly, I must dissent.